MAX SCHLESINGER and Others, Copartners, Doing Business under the Firm Name and Style of SCHLESINGER, PERLSTEIN & ROSENFELD, Respondents, *v.* CABLE OPERATING Co., INC., Appellant.

First Department, October 30, 19

Contempt — civil contempt — action between plaintiff and defendant was settled by stipulation February 23, 1925 — execution was stayed three months and defendant agreed to assign moneys due from fire insurance company — plaintiff filed lien on insurance moneys and defendant refused to give assignment — oral order made March 24, 1925, .directed defendant to deliver assignment — involuntary bankruptcy petition filed against defendant March 23, 1925 — assignment was given March 26, 1925 — bankruptcy not result of defendant's connivance — defendant not guilty of civil contempt in failing to give assignment before bankruptcy.

Civil contempt cannot be predicated on the failure of defendant to execute and deliver to the plaintiffs an assignment of moneys due to the defendant from a fire insurance company in pursuance of a stipulation settling this action on February 23, 1925, and staying execution for three months, since it appears that after the stipulation had been executed the plaintiffs filed a lien on the money in the possession of the insurance company, and the defendant refused to make the assignment for that reason, but was directed to do so on the 24th day of March, 1925, by an oral order and did on the 26th day of March, 1925, in compliance with said order, make the assignment required, which, because of the intervention of bankruptcy on the 23d day of March, 1925, was ineffective. There is nothing to show that bankruptcy was brought about by the defendant, and even if that were so, the assignment, if it had been made on the 23d day of February, 1925, in compliance with the original stipulation, would have been ineffective to transfer the money to the plaintiffs.

APPEAL by the defendant, Cable Operating Co., Inc., from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 24th day of June, 1925, adjudging the defendant Cable Operating Co., Inc., and its officers Leo Friedman and Adolph Mosberg, respectively president and secretary thereof, guilty of a civil contempt of court and fining them the sum of $1,000 therefor.

*James E. Lo Picolo* [*Maurice B. Rich* of counsel], for the appellant.

*Lesser & Lesser* [*Harry Lesser* of counsel], for the respondents.

BURR, J.:

Plaintiffs are carpenters and builders and were employed by the defendant company, which was the owner of a restaurant at Nos. 119–121 Pearl street and No. 10 Hanover street in the borough of Manhattan, New York city, to construct and erect a grill or buffet in the basement of said premises. Plaintiffs made a written contract with the defendant, by which the price for the labor and

material was fixed at $2,100 to be paid as follows: $1,100 in cash during the progress of the work, and the balance upon completion of the work in monthly promissory notes of $125, which notes were to be secured by a chattel mortgage upon the chattels and fixtures built and constructed, which chattel mortgage and notes the defendant was to execute and deliver to the plaintiffs upon completion of the work. Besides the work embraced in the written contract, plaintiffs claimed they were also employed to do some extra work, for which plaintiffs were to be paid the sum of $400, which sum was to be added to the notes and secured by the same chattel mortgage.

Plaintiffs completed their work. The defendant paid the $1,100 in cash, but declined to make the chattel mortgage and execute the notes in accordance with the agreement. Plaintiffs brought suit, the purpose of which seems to have been to foreclose the unexecuted chattel mortgage upon the fixtures and personal property which they had constructed and erected for the defendant, the theory and contention of the plaintiffs being that, as the defendant had obligated itself by its written agreement to execute and deliver the chattel mortgage, a court of equity would regard the defendant as having done that which it had obligated itself to do and would in the same action decree foreclosure.

The defendant interposed an answer in which the principal defense was a counterclaim for alleged damages by reason of alleged delay. Whether the action was properly brought it is not now necessary to consider. The case came on for trial at Special Term, Part IV of the Supreme Court, New York county, on February 23, 1925. It appeared in the course of the trial that after the suit was instituted a fire occurred on the defendant's premises and the property was destroyed by such fire. During the progress of the trial a settlement of the plaintiffs' claim was effected with the assistance and approval of the trial justice. At the time of such settlement the defendant was represented in court by counsel and by its president and its secretary. The plaintiffs were represented by one of the firm and plaintiffs' counsel.

The following statement of the terms of the settlement was embodied in the stenographer's minutes taken at the trial: "(After conference with the Court the parties stipulated as follows:) The defendant consents that judgment shall be entered in the sum of $1,000.00. There is to be a stay of execution for three months. Defendant is to execute and deliver to the plaintiff an assignment of moneys coming from the Insurance Company, caused by a loss by fire. If the moneys shall be paid sooner by the Insurance Company the plaintiff is to be paid sooner accordingly. The

defendant stipulates there is no other assignment against him except an assignment of $750 ahead of this — there is no judgment or claims ahead of this except one on the insurance company for $750 and no more."

There was some delay in forwarding to plaintiffs the assignment of the moneys coming from the insurance company, which delay it is claimed by defendant was due to the fact that plaintiffs filed with the insurance company a notice of claim as for a chattel mortgage for the sum of $1,400. Defendant demanded the withdrawal of the plaintiffs' notice of claim before it would execute the assignment. This was refused by plaintiffs, who immediately made a motion at Special Term, Part I, to compel defendant to summarily execute and deliver the assignment. The motion came on to be heard on the 16th day of March, 1925, and was then and there referred to the justice before whom the stipulation had been entered into. The granting of the motion was opposed by defendant on the ground that plaintiffs had violated the stipulation, and further that the judgment awarded was a personal judgment enforcible only by execution. Defendant asked that the stipulation be set aside and the case be restored to the calendar for trial. The motion was argued on the 24th day of March, 1925, and at the conclusion of the argument on that day the court granted the motion and made an oral order directing the defendant to execute and deliver the assignment within forty-eight hours thereafter.

On the 26th of March, 1925, the defendant sent and plaintiffs received the said assignment. Immediately thereafter plaintiffs ascertained that on the 23d day of March, 1925, an involuntary petition in bankruptcy was filed against the defendant corporation in the United States District Court, Southern District of New York, and that a receiver had been or was about to be appointed in such proceeding. Plaintiffs thereupon returned said assignment to defendant and moved to punish the defendant corporation and the president and secretary thereof for a civil contempt of court on the alleged ground that defendant had not complied with the stipulation. This motion was also referred to the justice before whom the stipulation was entered into, and the same coming on to be heard, an order was duly made and entered on the 24th day of June, 1925, by which order it was ordered and adjudged that defendant and its president and secretary were in contempt and were fined the sum of $1,000, and in default of the payment of said sum said officers were committed to the county jail. From that order this appeal is taken.

No order or judgment appears ever to have been made or entered

on the stipulation. The stipulation did not fix any specified time within which the defendant was to execute and forward the assignment. Under the terms of the stipulation defendant had the right to forward such assignment at any time within the three months unless the moneys from the insurance company were paid sooner, in which event the assignment, it is clear, was intended to precede such payment. Execution was to be stayed for three months.

The surreptitious filing by plaintiffs of a notice of claim with the insurance company for $1,400, which was greater than the amount awarded them by the judgment stipulated, was in effect an issuance of execution and was to that extent a breach of the terms of the stipulation.

The case was tried and the stipulation entered into at the end of February. The assignment was executed and delivered to plaintiffs on the 26th of March, 1925, or within a period of about three weeks.

Defendant's claim that the filing of the involuntary petition in bankruptcy against the defendant company was caused by the defendant's landlord and other creditors is not disproved. Nor is it shown that the claims of these creditors were not genuine. There is no basis for any claim that the bankruptcy proceedings were instigated by defendant's connivance. So far as the record discloses, the first knowledge defendant had of such proceedings was on the 24th day of March, 1925, the petition having been filed the day before.

The stipulation itself bears evidence that defendant was unable to meet its obligations at the very time such stipulation was entered into. It appears that defendant had theretofore made an assignment of $750 of the moneys expected from the insurance company. That assignment was to the defendant's landlord for rent then due. The filing of the petition in bankruptcy was instigated by the defendant's landlord, which demanded payment of the accrued rent and refused further assignments while the business was suspended by reason of the fire and no adjustment of the insurance had been made and no insurance money had been received with which to reopen it.

Had the assignment to plaintiffs been executed and delivered even at the time the stipulation was made, such assignment would have been rendered null if the petition in bankruptcy filed a month later resulted in an adjudication of the defendant as a bankrupt.

The defendant delivered the assignment. It did so in pursuance of an oral order of the court on plaintiffs' motion. That such assignments were nullities by operation of law was not a matter over which defendant had control.

*King* v. *Barnes* (113 N. Y. 476, 481) and *Matter of Goslin* (95 App. Div. 407), cited in support of the order, do not apply to the facts in this case.  The facts in the case of *King* v. *Barnes* (*supra*) showed wanton interference with the judicial administration and positive orders of the court by one Barnes, in that he actively instigated the officers of a corporation to refuse to obey orders of the court, and induced them to flee the jurisdiction of the court after having previously paid their various fines.  Subsequently they complied with the court's orders and were purged of contempt; but the court, holding that Barnes himself was the primary instigator of the wrongs of the officers of the corporation and had openly and willfully interfered with the court process and administration, adjudged him in contempt.

In *Matter of Goslin* (*supra*) the facts were that one Eberman had falsely sworn as a surety in an undertaking whereby his sister was enabled to secure from the possession of Goslin a load of furniture which Goslin had previously attached.  At the time that Eberman signed as one of the sureties on the undertaking, he swore that he had assets of $3,000 over and above present liabilities, whereas, in fact, there were a number of judgments outstanding against him, and about four days after he signed as one of the sureties on the undertaking, in an examination in supplementary proceedings, he acknowledged that he was unable to pay his judgment and that he had no assets at all.  It was manifest that Eberman had made a false affidavit and had consciously and wantonly imposed upon the court.

In the first of the cases cited there was a wanton defiance of the court's order, and in the second there was confessed false swearing in order to render futile the process of the court.  I do not think there is any evidence of willful resistance to any orders of the court to justify holding the defendant and its officers in contempt and imposing a fine of $1,000.

The defendant's alleged delay in delivering the assignment under the stipulation was due in great measure to the unauthorized filing by plaintiffs of the claim on the insurance company moneys for $1,400.  This action on the part of plaintiffs was clearly not warranted under the stipulation.  That the assignment when actually delivered by defendant to plaintiffs on March 26, 1925, under the oral direction of the court, turned out to be ineffective because bankruptcy proceedings had been instituted against the defendant company a day or two before by other creditors, has not been shown to have been in any way instigated or caused by defendant in order to defeat plaintiffs' claim or avoid compliance with the stipulation or the oral order of the court.  On the con-

trary, it clearly appears the involuntary petition in bankruptcy filed against defendant was a matter wholly beyond the control of the defendant and for which it was in no way responsible. Indeed, from the facts disclosed, it seems not at all unlikely that the unauthorized filing by plaintiffs of the notice of claim for $1,400 against the moneys due from the insurance company was an important factor in causing the institution of the bankruptcy proceedings against defendant.

The order appealed from should, therefore, be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

CLARKE, P. J., DOWLING, FINCH and McAVOY, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.